Emil A. Macasinag (State Bar No. 256953)
**WOOD, SMITH, HENNING & BERMAN LLP**
10960 Wilshire Boulevard, 18th Floor
Los Angeles, California 90024-3804
emacasinag@wshblaw.com
Phone: 310-481-7600 ♦ Fax: 310-481-7650

Eric P. Waeckerlin – *Pro Hac Vice*
**HOLLAND & HART LLP**
555 17th Street, Suite 3200
Denver, Colorado 80202
epwaeckerlin@hollandhart.com
Phone: 303.295.8086 ♦ Fax: 303.975.5396

Kathleen C. Schroder – *Pro Hac Vice*
**DAVIS GRAHAM & STUBBS LLP**
1550 17th Street, Suite 500
Denver, Colorado 80202
Katie.Schroder@dgslaw.com
Phone: 303.892.9400 ♦ Fax: 303.893.1379

February 4, 2019

The Honorable Yvonne Gonzalez Rogers
United States District Court, Northern District of California
Oakland Courthouse, Courtroom 1 – 4th Floor
1301 Clay Street
Oakland, CA 94612

RE:   Intervenor-Defendant Western Energy Alliance and Independent Petroleum Association of American's Letter Brief in Support of Motion for Summary Judgment, *State of California et al. v. Zinke et al.*, Case No. 4:18-cv-05712-YGR

Your Honor:

With this letter brief, Intervenor-Defendants Western Energy Alliance ("the Alliance") and the Independent Petroleum Association of America ("IPAA") respond to the Court's January 16, 2019 Order re: Parties' Joint Case Management Statement. This letter brief identifies the issues the Alliance and IPAA wish to address in their cross motion for summary judgment. They maintain that the Bureau of Land Management's ("BLM") current rule regulating waste of oil and natural gas on onshore federal and Indian leases, *Waste Prevention, Production Subject to Royalties, and Resource Conservation; Rescission or revision of Certain requirements*, 83 Fed. Reg. 49,184 (Sept. 28, 2018) ("2018 Rule"), is a lawful exercise of BLM's authority under the Mineral Leasing Act of 1920, as amended, ("MLA") and that, in promulgating it, BLM complied with the Administrative Procedure Act ("APA"), the National Environmental Policy Act of 1969 ("NEPA"), and the Federal Land Policy and Management Act ("FLPMA").

Background & Statement of the Alliance's and IPAA's Interests

The Alliance and IPAA intervened in *State of California et al. v. Zinke et al.*, Case No. 4:18-cv-05712-YGR, to defend the 2018 Rule. The Alliance and IPAA also challenged the rule that the 2018 Rule modified, *Waste Prevention, Production Subject to Royalties, and Resource Conservation*, 81 Fed. Reg. 83,008 (Nov. 18, 2016) ("2016 Rule"), in the United States District Court for the District of Wyoming because it regulated air quality rather than waste of oil and gas and was arbitrary and capricious. The States of Wyoming, Montana, North Dakota, and

Texas later joined in this challenge. The litigation challenging the 2016 Rule in the District of Wyoming is still pending, although it is stayed.

In a motion to preliminarily enjoin the 2016 Rule, the Alliance and IPAA maintained that the 2016 Rule violated BLM's statutory authority by regulating air quality, a function that Congress exclusively committed to the U.S. Environmental Protection Agency ("EPA"). The Alliance and IPAA also asserted that BLM acted arbitrarily by failing to consider the costs of the 2016 Rule on low-producing oil and natural gas wells ("marginal wells") and by accounting for the global, rather than domestic, impacts of the 2016 Rule using a global "social cost of methane" metric in its net benefit determination.

In its decision on motions for preliminary injunction, the District of Wyoming recognized that the 2016 Rule "upends the [Clean Air Act's] cooperative federalism framework and usurps the authority Congress expressly delegated under the [Clean Air Act] to the EPA, states, and tribes to manage air quality." Order on Mots. for Prelim. Inj., *Wyoming v. U.S. Dep't of the Interior*, No. 2:16-cv-00280-SWS, at *17 (Jan. 16, 2017) ("Wyoming Order"). That court further "question[ed] whether the 'social cost of methane' is an appropriate factor for BLM to consider in promulgating a resource conservation rule pursuant to its MLA authority." *Id.* at *21. The District of Wyoming stayed the 2016 Rule on April 4, 2018.

As litigants challenging the 2016 Rule, the Alliance and IPAA hold interests that are distinct from and not represented by the other defendants and defendant-intervenors, and request to brief their issues separately, consistent with the page limits to which the parties have agreed. Most significant, the Alliance and IPAA's interests depart from those of the Federal Defendants. The Federal Defendants promulgated the 2016 Rule and are currently litigants defending it in the District of Wyoming. Further, the 2018 Rule does not address all the Alliance and IPAA's objections, including BLM's decision not to modify the prohibition on venting of gas from gas wells in section 3179.6 as the Alliance and IPAA had requested.[1] These and other differences justify independent briefing.

Second, the Alliance and IPAA should brief independently from both the Federal Defendants and the State of Wyoming, which are "uniquely situated" as sovereigns, as the Citizen Groups note in their letter brief. *See* ECF No. 84, Letter Brief from Earthjustice et al. to Hon. Yvonne Gonzalez Rogers 2 (Jan. 24, 2019); *accord* ECF No. 83, Letter Brief from States of California and New Mexico 2 (Jan. 24, 2019).

Finally, the Alliance and IPAA's role in the litigation over the 2016 Rule distinguishes their interests from those of the American Petroleum Institute ("API"). API did not challenge the 2016 Rule in the District of Wyoming but participated as amicus curiae. Although there is some overlap in the membership of the Alliance, IPAA, and API, the Alliance's and IPAA's members

---

[1] *Compare* Western Energy Alliance & IPAA Comments on Waste Prevention, Production Subject to Royalties, and Resource Conservation; Rescission or Revision of Certain Requirements, Docket ID No. BLM-2018-0001-0001-132521, RIN 1004-AE53, at 16 (April 23, 2018) ("the Alliance and IPAA's 2018 Comments") *with* BLM, Public Comments and Responses of the West Prevision – Revise or Rescind Rule 133–34 (July 13, 2018) (ID Nos. BLM-2018-0001-223608 and BLM-2018-0001-132521 at www.regulations.gov).

include primarily smaller, independent oil and natural gas producers on federal lands, many of which operate marginal wells that would be disproportionately impacted by the 2016 Rule. API's membership is diverse and consists of oil and gas companies involved in all sectors of the oil and gas industry, including exploration and production, oilfield services, midstream transportation, marketing, refining, and retail. Therefore, the Alliance and IPAA should be permitted to file a separate brief from API.

Summary of Arguments

Below, the Alliance and IPAA have identified the arguments they intend to advance in their cross motion for summary judgment. They also identify the arguments they anticipate adopting by reference to briefs filed by other parties. These arguments may change, however, once the administrative record and Plaintiffs' motions for summary judgment are filed. In preparation of this letter brief, the Alliance and IPAA have coordinated and will continue to coordinate with API to avoid duplication of issues when preparing their cross motions for summary judgment. Should the Court order joint briefing, the Alliance and IPAA request that the Court provide the parties an adequate number of pages to address their distinct interests.

**A.    The 2018 Rule Reflects a Reasoned Change in Policy.**

The Plaintiffs improperly attempt to hold BLM's effort to revise the 2016 Rule to "heightened standard" rejected by the United States Supreme Court. *See Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 514 (2009). "[T]he requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it *is* changing position." *Id.* at 515. "[I]t suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better, which the conscious change of course adequately indicates." *Id.* BLM adequately justified its decision to revise and replace the 2016 Rule based upon new findings informed by litigation over the 2016 Rule and a new administrative record for the 2018 Rule.

**B.    BLM Was Justified in Rescinding Those Provisions of the 2016 Rule that Exceeded Its Statutory Authority.**

BLM properly justified its decision to revise and replace the 2016 Rule based on its determination that certain provisions "exceeded the BLM's statutory authority to regulate for the prevention of 'waste' under the Mineral Leasing Act (MLA)." 83 Fed. Reg. at 49,185. This decision was reasonable because the 2016 Rule did not regulate waste but rather usurped EPA's exclusive authority to regulate air quality. The 2016 Rule most conspicuously regulated air quality by applying EPA's regulations at 40 C.F.R. part 60, subpart OOOOa ("Quad Oa"), which address emissions from new and modified oil and natural gas facilities, to existing facilities on federal and Indian leases. The 2016 Rule required oil and natural gas operators of existing facilities to limit emissions during well completions, implement a leak detection and repair ("LDAR") program to identify and address leaks of fugitive emissions from certain production equipment, replace certain pneumatic controllers and pneumatic diaphragm pumps, and control storage tank emissions. *See* 81 Fed. Reg. at 83,084–89 (43 C.F.R. §§ 3179.102, 3179.201–3179.203, 3179.301–3179.305).

BLM's regulation of air quality at existing facilities in lieu of EPA doing so enabled BLM to bypass required Clean Air Act ("CAA") procedures. Section 111(d) of the CAA requires EPA to follow rigorous procedures before it can regulate existing sources. BLM, however, bypassed these procedures, citing the "length of [that] process and the uncertainty regarding the final outcomes." 81 Fed. Reg. at 83,019. As a result, BLM never meaningfully considered the costs of the 2016 Rule on existing oil and gas facilities, including whether such costs were justified over the remaining useful life at marginal wells. Even if Congress authorized BLM to bypass established CAA requirements, which it did not, the agency did not calculate the per-well costs of the rule, which is the only metric that could inform whether the requirements being imposed were cost effective.[2] *See id.* at 83,068–69. BLM's decision to usurp EPA's CAA authority and regulate air emissions from existing oil and natural gas facilities was unlawful and directly affected the rule's substantive outcome.

The District of Wyoming recognized these flaws, explaining that the 2016 Rule "upends the [Clean Air Act's] cooperative federalism framework and usurps the authority Congress expressly delegated under the [Clean Air Act] to the EPA, states, and tribes to manage air quality." Wyoming Order at *17. Hearing this criticism, BLM explained in the 2018 Rule that it "considered the court's concerns with the 2016 rule and [found] them to be valid." 83 Fed. Reg. at 49,186.

BLM also reasonably determined that the 2016 Rule was inconsistent with BLM's authority to manage waste under the MLA. Western Energy Alliance and IPAA understand that API intends to address this issue in its motion for summary judgment and anticipate they will adopt API's argument regarding the management of waste under the MLA by reference.

**C.     BLM Reasonably Promulgated the 2018 Rule to Reduce Burdens on Low-Producing Wells.**

BLM reasonably justified the 2018 Rule on a determination that the 2016 Rule would disproportionately impact marginal wells, thus jeopardizing the economic operations of many marginal wells and smaller operators and resulting in significant adverse economic impacts. *See* 83 Fed. Reg. at 49,185-88. The Alliance and IPAA warned BLM of these disproportionate impacts in comments to both the 2016 and 2018 Rules. *See* Western Energy Alliance & IPAA Comments on Waste Prevention, Production Subject to Royalties, and Resource Conservation, Docket ID No. BLM-2016-0001-01865, RIN 1004-AE14, at App. A (April 22, 2016); *see also* the Alliance and IPAA's 2018 Comments at 9-12, App. E (April 23, 2018). The Alliance and IPAA also consistently raised similar concerns in this Court and in the Wyoming litigation. In the 2018 Rule, BLM provided a detailed analysis of these impacts on a per-well basis, concluding that "the compliance burdens of the 2016 Rule pose a greater cost to marginal-well producers." *See* 83 Fed. Reg. at 49,187. The Alliance and IPAA are uniquely positioned to raise these issues in this case and intend to argue that BLM has established good reasons and provided detailed and reasoned explanations for its choice to avoid marginal well impacts.

---

[2] Instead, BLM calculated an average cost per operator, a meaningless metric given the wide range of operators affected. *See* 81 Fed. Reg. at 83,013. Western Energy Alliance and IPAA provided an updated estimate of the per well costs of the 2016 Rule compared with the 2018 Rule. *See* the Alliance IPAA's 2018 Comments at App. C, 7-8.

BLM also notes that "the 2016's rule requirements that would have placed a particular burden on marginal wells were those pertaining to pneumatic controllers, pneumatic diaphragm pumps, and LDAR." *Id*. In the 2018 Rule, BLM removed these requirements, in part because as air quality provisions they exceeded the agency's statutory authority to regulate "waste" under the MLA. Removing provisions for which BLM lacks statutory authority serves as separate and additional justification for the 2018 Rule. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress").

Finally, the States' letter brief argues that marginal well impacts would have been mitigated through economic exemption provisions in the 2016 Rule that allowed operators to propose less costly alternatives or seek exemption. *See* States' Letter Brief at 4. The Alliance and IPAA have consistently argued that these exemption provisions were impractical and meaningless. In the 2018 Rule, BLM explains why the 2016 Rule's "exception" process would not adequately mitigate the impacts of that rule on marginal wells, including because a full LDAR exemption was not available and the standard was "unclear and subject to interpretation." 83 Fed. Reg. at 49,187. In short, BLM's decision to avoid imposing disproportionate impacts on marginal wells is rational, well-grounded in law and fact, and not arbitrary or capricious.

### D.   BLM's Use of the Global Social Cost of Methane to Justify the 2016 Rule was Arbitrary and Capricious.

BLM reasonably utilized the interim domestic social cost of methane to assess the costs and benefits of the 2018 Rule in the associated Regulatory Impact Analysis ("RIA"). The interim domestic social cost of methane approximates the climate change impacts that occur within the United States. By contrast, BLM had relied on the global social cost of methane.

BLM's use of the global social cost of methane in the RIA for the 2016 Rule, and its determination that the benefits of the 2016 Rule outweighed its costs, was arbitrary and capricious. BLM could only determine that the 2016 Rule yielded a "net benefit" by using the global social cost of methane to estimate global climate change benefits from methane reductions. Using the global social cost of methane runs counter to sound economic and good government principles because it compares costs born only by domestic producers with benefits extrapolated to the rest of the world. Further, the District of Wyoming "question[ed] whether the 'social cost of methane' is an appropriate factor for BLM to consider in promulgating a resource conservation rule pursuant to its MLA authority." Wyoming Order at 21.

In its challenge to the 2016 Rule, the Alliance and IPAA advocated that BLM should isolate the domestic-only benefits to properly compare them with domestic costs. In the RIA accompanying the 2018 Rule, BLM abandoned the flawed global social cost of methane analysis in favor of an interim global social cost of methane analysis. This metric allows BLM to reasonably compare domestic benefits of the 2018 Rule with domestic costs borne by oil and gas producers. Further, this metric is consistent with Executive Order No. 13,771, 82 Fed. Reg. 9,339 (Feb. 3, 2017), and the Office of Management and Budget Circular A-4, which establishes that an agency's analysis should "focus on benefits and costs that accrue to citizens and residents of the United States." OMB Circular A-4 § E.1 (Sept. 17, 2003).

### E.   The 2018 Rule is Consistent with the Mineral Leasing Act's Management of Waste.

The Alliance and IPAA assert that the 2018 Rule comports with the MLA's management of waste. The 2018 Rule satisfies BLM's obligations toward waste under the MLA. *See* 30 U.S.C. §§ 187, 225. In addition, BLM's definition of "waste" is consistent with BLM's historical understanding of waste. *See* 83 Fed. Reg. at 49,212 (43 C.F.R. § 3179.3). The Alliance and IPAA understand that API intends to address the 2018 Rule's consistency with the MLA's management of waste in detail and anticipate they can adopt API's arguments by reference.

### F.   The 2018 Rule Properly Recognizes State Regulation of Venting and Flaring.

The Alliance and IPAA maintain that BLM properly deemed gas vented or flared in accordance with state or tribal rules, regulations or orders to be royalty-free. The Alliance and IPAA understand that both the State of Wyoming and API will address this issue. The Alliance and IPAA anticipate they can adopt the State of Wyoming's and API's arguments by reference.

### G.   BLM Complied with the National Environmental Policy Act.

BLM complied with NEPA by taking a "hard look" at the environmental impacts of the 2018 Rule. Further, BLM analyzed a reasonable range of alternatives prior to enacting the 2018 Rule. The Alliance and IPAA understand that API intends to address the adequacy of BLM's NEPA analysis in its brief. If so, the Alliance and IPAA anticipate they can adopt API's arguments on this issue by reference. The Alliance and IPAA, however, may offer independent briefing on the adequacy of BLM's range of alternatives in its NEPA analysis if the Plaintiffs argue that BLM should have considered an economically infeasible alternative, given their unique interests in marginal wells and economic impacts on smaller operators.

Conclusion

Based on the issues identified in this Letter Brief, the Alliance and IPAA intend to file a cross motion for summary judgment against all causes of action in the States' and Citizen Groups' Amended Complaints, and in support of the 2018 Rule as being a lawful exercise of BLM's jurisdiction under the APA, MLA, FLPMA, and NEPA. The Alliance and IPAA respectfully request to file an independent brief subject to ongoing efforts to incorporate arguments by reference and avoid duplication as discussed herein, and consistent with the page limits already agreed upon by the parties.

Sincerely,

*s/ Eric P. Waeckerlin*

| Eric P. Waeckerlin | Kathleen C. Schroder | Emil A. Macasinag |
|---|---|---|
| HOLLAND & HART LLP | DAVIS GRAHAM & STUBBS LLP | WOOD, SMITH, HENNING & BERMAN LLP |

*Attorneys for Intervenor-Defendants Western Energy Alliance and*
*Independent Petroleum Association of America*