

**U.S. Department of Justice**

Environment and Natural Resources Division

90-1-4-15549

_Natural Resources Section_                                          _Telephone (202) 305-0444_
_P.O. Box 7611_                                                       _Facsimile (202) 305-0506_
_Washington, DC  20044_


February 4, 2019


The Honorable Yvonne Gonzalez Rogers
U.S. District Court for the Northern District of California
Oakland Courthouse
1301 Clay Street
Oakland, CA 94612

      Re:    Defendants' Letter Brief, _California v. Bernhardt_, No. 18-cv-5712-YGR
              (consolidated with _Sierra Club v. Bernhardt_, No. 18-cv-5984-YGR)

Dear Honorable Judge Gonzalez Rogers:

      Pursuant to the Court's January 16, 2019 Order re: Parties' Joint Case Management Statement, ECF No. 81, Defendants Acting Secretary of the Interior David Bernhardt, Assistant Secretary for Land and Minerals Management Joseph Balash, the U.S. Department of the Interior, and the U.S. Bureau of Land Management ("BLM") submit this letter brief identifying the issues Defendants wish to address in their cross motion for summary judgment and discussing which of those issues could be briefed jointly.

<u>**Background**</u>

      These two consolidated cases challenge a recent rulemaking by BLM entitled Waste Prevention, Production Subject to Royalties, and Resource Conservation; Rescission or Revision of Certain Requirements ("Revision Rule"), 83 Fed. Reg. 49184 (Sept. 28, 2018).  This rule revises or rescinds certain provisions of an earlier BLM rule, the 2016 Waste Prevention, Production Subject to Royalties, and Resource Conservation Rule ("2016 Rule"), 81 Fed. Reg. 83008 (Nov. 18, 2016).  The 2016 Rule was intended to address the waste of natural gas from venting, flaring, and equipment leaks during oil and natural gas production on federal and Indian lands, and to clarify when lost gas is subject to royalties and when oil and gas can be used royalty-free on the production site.  Although the 2016 Rule became effective on January 17, 2017, the majority of its requirements were to phase-in one year later, beginning January 17, 2018.  The 2016 Rule was immediately challenged by states and industry organizations in the U.S. District Court for the District of Wyoming.  Those cases remain pending.

      On March 28, 2017, President Trump issued Executive Order 13783 directing BLM to review the 2016 Rule to determine whether it was consistent with certain policies, including

promoting "clean and safe development of our Nation's vast energy resources, while at the same time avoiding regulatory burdens that unnecessarily encumber energy production, constrain economic growth, and prevent job creation." 82 Fed. Reg. 16093 (Mar.28, 2017). The order directed BLM to "suspend, revise, or rescind, or publish for notice and comment proposed rules suspending, revising, or rescinding" the 2016 Rule "if appropriate." *Id.* at 16096.

In response to the executive order, BLM reviewed the 2016 Rule and "found that certain impacts were underestimated and many provisions of the rule would have added regulatory burdens that unnecessarily encumber energy production, constrain economic growth, and prevent job creation." 83 Fed. Reg. at 49184. In particular, BLM found that that the 2016 Rule "would have imposed costs exceeding its benefits" and that many provisions of the 2016 Rule exceeded the BLM's statutory authority to regulate for the prevention of "waste." *Id.* at 49184-85. In support of these conclusions, BLM developed a thorough explanatory preamble to the final rule, a detailed Regulatory Impact Analysis that considered the economic impacts of the Revision Rule as compared to the 2016 Rule, and an Environmental Assessment that took a hard look at the environmental impacts of the Revision Rule.

BLM published the Revision Rule in the Federal Register on September 28, 2018 and the rule took effect on November 27, 2018. The Revision Rule rescinds a range of novel requirements included in the 2016 Rule for which the cost of compliance far outweighs the value of any conserved gas. In their stead, the Revision Rule reestablishes, and improves upon, the waste prevention requirements that had been in place prior to the 2016 Rule. These provisions discourage excessive venting and flaring "by placing volume and/or time limits on royalty-free venting and flaring during production testing, emergencies, and downhole well maintenance and liquids unloading." *Id.* at 49184. Finally, the Revision Rule aligns federal and state requirements regarding the routine flaring of oil-well gas, thereby allowing for region-specific regulation that accounts for local differences in production, markets, and infrastructure. *Id.* at 49202.

## **Defendants' Proposed Cross Motion for Summary Judgment**

Defendants intend to file a cross motion for summary judgment in these cases arguing that Plaintiffs' claims fail as a matter of law. Defendants reserve the right to also challenge this Court's subject matter jurisdiction, including whether Plaintiffs have standing to assert their claims. Because the administrative record has not yet been filed, the parties to this action do not yet have the full set of facts before them. For that reason, Defendants reserve the right to supplement the arguments and defenses stated in this letter with additional arguments and defenses based on Plaintiffs' motions and the evidence contained in the record.

Defendants do not believe that they can effectively brief any issues jointly with Defendant-Intervenors. Defendant-Intervenors are the State of Wyoming and three oil and gas industry organizations (Western Energy Alliance, the Independent Petroleum Association of America, and the American Petroleum Institute). The interests and perspectives of the State of Wyoming and these industry organizations are distinct from those of the Defendant federal agencies. Whereas Wyoming is presumably concerned with the effects of the Revision Rule within its borders and industry organizations are focused on the effect of the rule on the individual companies they represent, Defendant agencies are tasked with regulating oil and gas development on federal and Indian lands nationwide and with balancing the many competing

interests in how federal and Indian lands and minerals are managed. In addition, the federal government has unique concerns of federal sovereignty that are not shared by the Defendant-Intervenors. For these reasons, Defendants respectfully request that they are allotted sufficient pages to fully respond to Plaintiffs' motions, and that their pages are not limited based on the pages sought by Defendant-Intervenors.[1]

In their cross motion for summary judgment, Defendants currently plan to make three broad arguments: (1) the Revision Rule is a reasonable approach to oil and gas management and is not arbitrary and capricious in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706; (2) the Revision Rule is a lawful exercise of BLM's authority to regulate oil and gas on federal and Indian lands under the Mineral Leasing Act ("MLA") and other statutes; and (3) BLM fully complied with the National Environmental Policy Act ("NEPA") in issuing the Revision Rule.

## 1. The Revision Rule is a reasonable approach to oil and gas management.

### a. The Revision Rule fixes the 2016 Rule's significant flaws.

In reviewing the 2016 Rule for consistency with the policies established by Executive Order 13783, BLM found that the 2016 Rule suffered from significant defects that would have encumbered energy production by imposing costly and duplicative requirements that generated limited benefits. For example, the 2016 Rule imposed compliance costs for industry and implementation costs for BLM that far exceeded the value of conserved gas and reduced emissions. *See* 83 Fed. Reg. at 49184. And the 2016 Rule's requirements would have placed a particular burden on marginal wells, which represent the majority of wells on BLM-managed lands. *See, e.g., id.* at 49185. Moreover, the 2016 Rule overlapped with regulations issued by the Environmental Protection Agency under the Clean Air Act and was duplicative of many state oil and gas regulations. *Id.* at 49186. BLM's review also highlighted that the 2016 Rule was a departure from BLM's historic approach to the regulation of "waste," and that many provisions of the 2016 Rule exceeded BLM's statutory authority to regulate for the prevention of "waste." *Id.* at 49184-85.

The result of BLM's review is a regulatory framework similar to BLM's prior policy governing venting and flaring on federal and Indian lands, NTL-4A, but with improvements that remedy weaknesses of the prior policy and utilize the strengths of the 2016 Rule. *Id.* at 49189. BLM kept those portions of the 2016 Rule that were shown to be effective, *see, e.g., id.* at 49190 (identifying requirements that were modified or retained without modification), and rescinded other requirements contained in the 2016 Rule that were not, *see, e.g., id.* (listing requirements that were rescinded). As the expert agency, BLM's thoughtful, data-driven decision to reform the way venting and flaring are regulated on public lands is owed deference by the Court.

### b. BLM adequately explained its change in position.

BLM met the requirements for changing its position on how it regulates oil and gas production on federal and Indian lands. BLM has "flexibility to alter policies" and "considerable

---

[1] The parties jointly agreed to page counts in their Joint Case Management Statement. ECF No. 77. Defendants believe that those agreed-upon page counts remain appropriate.

latitude to change course." *Modesto Irr. Dist. v. Gutierrez*, 619 F.3d 1024, 1034 (9th Cir. 2010). The standard of review for an agency's rulemaking is no more stringent when the agency changes its position.  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514 (2009).  Its decision can be set aside "*only* if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Earth Island Inst. v. U.S. Forest Serv.*, 697 F.3d 1010, 1013 (9th Cir. 2012) (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)).  "[I]t suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *FCC*, 556 U.S. at 515.

Here, upon reconsideration, BLM determined that the 2016 Rule was defective in important respects and did not align with the policy of the new administration.  The agency sought public input on its proposed changes using the notice-and-comment rulemaking procedures under the APA, *see* 83 Fed. Reg. 7924 (Feb. 22, 2018) (providing for a 60-day public comment period); acknowledged that it was "revising" or "rescinding" its regulations, *id.* at 49184; and set forth a number of good reasons for the new policy.  *See FCC*, 556 U.S. at 515. Among other reasons, BLM explained in detail that the 2016 Rule's costs exceeded its benefits and that the rule exceeded BLM's authority to regulate waste, threatened marginal wells, would have allowed for unnecessary flaring in some cases while prohibiting necessary flaring in others, and contained numerous administrative and reporting requirements that would have imposed unnecessary burdens on operators and BLM.  83 Fed. Reg. at 49184-97.  In sum, BLM met the requirements for changing its position with regard to how it regulates oil and gas production on federal and Indian lands.

### c.   BLM's use of the interim domestic social cost of methane to evaluate costs and benefits is reasonable.

To determine the monetary value of the impacts associated with a change in methane emissions, BLM uses a measure called the social cost of methane.  In evaluating the costs and benefits of the 2016 Rule, BLM used a global measure of the social cost of methane.  For the Revision Rule, however, BLM used a domestic measure of the social cost of methane.  This change was reasonable because it was based on a 2017 Executive Order that specifically directed BLM to abide by longstanding OMB guidance instructing economic analyses of regulations to "focus on benefits and costs that accrue to the citizens and residents of the United States." Office of Mgmt. & Budget, Office of the President, OMB Circular A–4, at E-1 (2003); *see also* 82 Fed. Reg. at 16096 (Executive Order 13783).  The same Executive Order also rescinded several of the technical documents that BLM relied upon in valuing the social cost of methane for the 2016 Rule.  82 Fed. Reg. at 16095.  A court in the Northern District of California recently found, in the context of a preliminary injunction, that BLM's shift from using a global social cost of methane to a domestic social cost of methane was reasonable in light of Executive Order 13783 and "within its discretion." *California v. BLM*, 286 F. Supp. 3d 1054, 1069-70 (N.D. Cal. 2018).

**2.   The Revision Rule is a lawful exercise of BLM's statutory authority.**

   **a.   BLM has broad authority to manage oil and gas development on federal and Indian lands.**

Congress has unambiguously delegated to the Secretary of the Interior broad authority to manage mineral development on federal and Indian lands via a range of statutes, including the MLA, Indian Mineral Leasing Act ("IMLA"), and Federal Oil and Gas Royalty Management Act ("FOGRMA").  While these statutes each include a range of objectives, all are concerned with promoting the development of oil and gas on public lands to provide a source of domestic energy and ensure that U.S. taxpayers and Indian tribes benefit from the development of public and Indian oil and gas resources.  *See, e.g.*, 30 U.S.C. § 187; *id.* § 226; *id.* § 1711; *id.* § 1701.  The Revision Rule is a reasonable exercise of BLM's broad authorities to manage oil and gas development on federal and Indian lands in a manner that the agency deems necessary and appropriate to achieve the many and varied objectives of these statutes.

Plaintiffs contend that the Revision Rule fails to ensure that operators abide by the MLA's requirements that mineral lessees take "all reasonable precautions to prevent waste of oil or gas," 30 U.S.C. § 225, and that each lease contain provisions ensuring that rules "for the prevention of undue waste as may be prescribed by the Secretary shall be observed," *id.* § 187.  As the agency charged with administering the MLA, BLM's interpretation of the MLA's provisions and, in particular, what constitutes "reasonable precautions" and "undue waste," is owed deference by this Court.  *Chevron, U.S.A., Inc. v. Natural. Resources Defense Council*, 467 U.S. 837 (1984).  The plain text of the MLA makes clear that Congress did not intend BLM to prevent all possible loss of oil and gas regardless of quantity, feasibility of capture, or expense.  BLM's determination that "[t]he exercise of 'reasonable diligence' and employment of 'reasonable precautions' do not require an operator to lose money capturing and marketing uneconomic gas" is a permissible reading of the MLA.  83 Fed. Reg. at 49186.

Though Plaintiffs paint it as an abdication of BLM's responsibilities, in fact, the Revision Rule represents a return to, and improvement upon, the regulatory framework that had been in place for decades prior to the 2016 Rule, NTL-4A.  Like NTL-4A, the Revision Rule encourages the prevention of waste by requiring operators to pay royalties on all "avoidably lost" gas, which includes gas lost due to operator negligence or failure to take all reasonable precautions.  43 C.F.R. §§ 3179.4(a), 3179.5.  BLM's decision to focus on cost-effective means of preventing waste rather than imposing expenses on operators far in excess of the value of the conserved resource constitutes a reasonable exercise of its authority under the MLA.

   **b.   The Revision Rule does not delegate authority to states or tribes.**

The Revision Rule is not an unlawful delegation of authority because it does not delegate any of BLM's responsibilities to any other entity.  Rather, the rule refrains from imposing additional restrictions on venting and flaring where states have already put in place "limitations on the venting or flaring of oil-well gas, including through general or qualified prohibitions, volume or time limitations, capture percentage requirements, or trading mechanisms."  43 C.F.R. § 3179.201(a).  In determining that state regulations adequately address waste of oil-well gas, BLM thoroughly investigated existing state oil and gas regulations and found that the ten states that, together, produce 99% of federal oil and 98% of federal gas all have existing regulations

that prevent the waste of gas from venting and flaring.  83 Fed. Reg. at 49202.  To avoid creating complications for operators who would otherwise have to comply with multiple sets of overlapping but distinct regulations, BLM reasonably decided not to impose additional requirements when existing state regulations are sufficient to prevent undue waste.  BLM has no legal obligation to impose additional regulatory requirements where those requirements are not necessary to achieve BLM's statutory objectives.

### 3.  BLM fully complied with NEPA.

BLM fully complied with the requirements of NEPA.  First, BLM took the requisite hard look at the Revision Rule's impacts.  NEPA requires BLM to examine the potential environmental effects of proposed federal actions, and to inform the public about those effects. *See, e.g.*, *Baltimore Gas & Elec. Co.*, *v. NRDC*, 462 U.S. 87, 97 (1983).  Here, BLM took a "hard look" at the Revision Rule's impacts by considering the direct, indirect, and cumulative effects of the rule and each alternative on the human environment, and then properly concluded in its Finding of No Significant Impact that an Environmental Impact Statement was not required.  For example, contrary to Plaintiffs' contention, BLM analyzed air emissions and their potential impacts on the public when making its decision.  *See, e.g.*, EA 17-19.[2]  Additionally, while Plaintiffs are correct that the EA is only 26 pages long, they ignore the extensive analyses incorporated by reference.  *See, e.g.*, *id.* at 9  Based on the EA, BLM reasonably concluded that the final rule would not have a significant impact on the quality of the human environment.

Second, BLM considered an adequate range of alternatives.  BLM's obligation to consider alternatives under an EA is a lesser one than under an EIS; nevertheless, NEPA requires that alternatives be given full and meaningful consideration.  *Envtl. Prot. Info. Ctr. v. U.S. Forest Serv.*, 451 F.3d 1005, 1016 (9th Cir. 2006).  A rule of reason guides "both the choice of alternatives as well as the extent to which the [agency] must discuss each alternative."  *City of Carmel–By–The–Sea v. U.S. Dep't of Transp.*, 123 F.3d 1142, 1155 (9th Cir. 1997).  Here, BLM appropriately considered six alternatives in the EA.  EA 6-9.  It then discussed three alternatives in detail.  The range of alternatives considered by BLM enabled it to make an informed and reasoned choice as to how to revise the 2016 Rule in a manner that ensures compliance with NEPA and consistency with the policies set forth in Executive Order 13783.

### Conclusion

The administrative record will demonstrate that Plaintiffs' claims fail as a matter of law and that the Revision Rule is not arbitrary and capricious in violation of the APA; is a lawful exercise of BLM's statutory authority to regulate oil and gas; and BLM fully complied with NEPA in issuing the Revision Rule.  Defendants respectfully request that they be allowed to brief these issues independently from Defendant-Intervenors.

Sincerely,

JEAN E. WILLIAMS
Deputy Assistant Attorney General

---

[2] The EA is available at https://www.regulations.gov/document?D=BLM-2018-0001-223606.

Environment & Natural Resources Division
United States Department of Justice

*/s/ Carter F. Thurman*
CARTER F. THURMAN
Trial Attorney, admitted to GA Bar
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
601 D Street, NW
Washington, D.C. 20044-7611
Tel.: (202) 305-0444 / Fax: (202) 305-0506
Carter.Thurman@usdoj.gov
CLARE M. BORONOW, admitted to MD Bar
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
Tel.: (303) 844-1362 / Fax: (303) 844-1350
clare.boronow@usdoj.gov

*Counsel for Defendants*