Thomas F. Vandenburg (State Bar No. 163446)
tvandenburg@wshblaw.com
Stratton P. Constantinides (State Bar No. 305103)
sconstantinides@wshblaw.com
**WOOD, SMITH, HENNING & BERMAN LLP**
10960 Wilshire Boulevard, 18th Floor
Los Angeles, California 90024-3804
Phone: 310-481-7600 ♦ Fax: 310-481-7650

 [ADDITIONAL COUNSEL LISTED ON
FOLLOWING PAGE]

Attorneys for INTERVENORS
WESTERN ENERGY ALLIANCE and
INDEPENDENT PETROLEUM
ASSOCIATION OF AMERICA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, by and through XAVIER BECERRA, ATTORNEY GENERAL; and the CALIFORNIA AIR RESOURCES BOARD; and STATE OF NEW MEXICO, by and through HECTOR BALDERAS, ATTORNEY GENERAL,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID BERNHARDT, Secretary of the Interior; JOSEPH R. BALASH, Assistant Secretary for Land and Minerals Management, United States Department of the Interior; UNITED STATES BUREAU OF LAND MANAGEMENT; and UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>Defendants.<br><br>STATE OF WYOMING, WESTERN ENERGY ALLIANCE, INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA, AMERICAN PETROLEUM INSTITUTE,<br><br>Intervenor-Defendants. | Case No. 4:18-cv-05712-YGR<br>Related: Case No. 4:18-cv-05984-YGR<br><br>**WESTERN ENERGY ALLIANCE AND INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT**<br><br><br>Hearing Date: January 14, 2020<br>Hearing Time:     10:00 a.m.<br>Courtroom:          2, 4th Floor<br>Judge: Hon. Yvonne Gonzales-Rogers |

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:10854-0001/13371308.1

WESTERN ENERGY ALLIANCE AND INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA'S
REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

13930746_v3

1   Eric P. Waeckerlin – *Pro Hac Vice*
    epwaeckerlin@hollandhart.com
2   **HOLLAND & HART LLP**
    555 17th Street, Suite 3200
3   Denver, Colorado 80202
    Tel: 303.295.8086 ♦ Fax: 303.975.5396
4
    Kathleen Schroder – *Pro Hac Vice*
5   Katie.Schroder@dgslaw.com
    **DAVIS GRAHAM & STUBBS LLP**
6   1550 17th Street, Suite 500
    Denver, Colorado 80202
7   Tel: 303.892.9400 ♦ Fax: 303.893.1379

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:10854-0001/13371308.1

WESTERN ENERGY ALLIANCE AND INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA'S
REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I.   BLM Has Provided "Good Reasons" to Reduce Impacts on Marginal Wells via the
     Revision Rule (Issue B)........................................................................................................ 1

     A.   The Revision Rule Correctly Addresses Regulatory Burdens Imposed by the
          2016 Rule (Issue B-1). ......................................................................................... 1

     B.   Plaintiffs Do Not Demonstrate Error in BLM's Marginal Well Analysis
          (Issue B-2a). .......................................................................................................... 5

          1.   Plaintiffs Had Sufficient Notice of the Marginal Well Issue. .................................. 5

          2.   Plaintiffs Lack Standing to Challenge BLM's Compliance with the Regulatory
               Flexibility Act. .......................................................................................................... 8

     C.   The Record Supports the Revision Rule (Issue B-2c)............................................ 10

II.  BLM's Cost Benefit Analysis Supports the Revision Rule (Issue C). ................................ 10

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

WESTERN ENERGY ALLIANCE AND INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA'S
REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Air Transport Ass'n of Am. v. F.A.A.*,
  169 F.3d 1 (D.D.C. 1999)..................................................................................................3

*Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*,
  397 U.S. 150 (1970) ........................................................................................................9

*BASF Wyandotte Corp. v. Costle*,
  598 F.2d 637 (1st Cir.1979) ............................................................................................6

*California v. BLM*,
  286 F. Supp. 3d 1054 (N.D. Cal. 2018) ........................................................................10

*Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Newport News Shipbuilding & Dry Dock Co.*,
  514 U.S. 122 (1995) ........................................................................................................9

*Drakes Bay Oyster Co. v. Jewell*,
  747 F.3d 1073 (9th Cir. 2014).......................................................................................11

*Marsh v. Or. Nat. Res. Council*,
  490 U.S. 360 (1989) ......................................................................................................10

*Regents of the Univ. of Calif. v. Burwell*,
  155 F. Supp. 3d 31 (D.D.C. 2016) ................................................................................10

*Rybachek v. U.S. E.P.A.*,
  904 F.2d 1276 (9th Cir. 1990).........................................................................................6

*Wyoming v. U.S. Dep't of the Interior*,
  366 F. Supp.3d 1284 (D. Wyo. 2018), *order vacated, appeal dismissed sub nom. Wyoming v. U.S. Dep't of Interior*, 768 F. App'x 790 (10th Cir. 2019) ..........................11

## STATUTES

5 U.S.C. § 702 ......................................................................................................................9

5 U.S.C. § 706 ....................................................................................................................10

5 U.S.C. § 706(2)(C) ..........................................................................................................10

Clean Air Act ......................................................................................................................10

Mineral Leasing Act..............................................................................................................3

Regulatory Flexibility Act................................................................................................8, 9

LEGAL:10854-0001/13371308.1

WESTERN ENERGY ALLIANCE AND INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA'S
REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

## OTHER AUTHORITIES

U.S. Constitution Article III ...................................................................................................................9

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ◆ FAX 310-481-7650

WESTERN ENERGY ALLIANCE AND INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA'S
REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

## MEMORANDUM OF POINTS AND AUTHORITIES

The Revision Rule reflects the Bureau of Land Management's ("BLM") reasonable policy choice to remove the provisions of the 2016 Rule that exceed BLM's statutory authority and to relieve regulatory burdens that the rule imposed on marginal oil and gas wells. In their collective 77 pages of additional briefing (ECF Nos. 140 and 141), Plaintiffs do not establish otherwise. Rather, Plaintiffs simply repeat many of the arguments they raised in their opening briefs (ECF Nos. 108 and 109). To conserve this Court's resources, Western Energy Alliance ("Alliance") and the Independent Petroleum Association of America ("IPAA") will not repeat the responses to these arguments. Rather, we rebut a narrow handful of fresh misstatements made by Plaintiffs. Further, the Alliance and IPAA hereby adopt and incorporate as their own the replies of the Federal Defendants, ECF No. 145, and the American Petroleum Institute ("API").

## ARGUMENT

### I. BLM Has Provided "Good Reasons" to Reduce Impacts on Marginal Wells via the Revision Rule (Issue B).

#### A. The Revision Rule Correctly Addresses Regulatory Burdens Imposed by the 2016 Rule (Issue B-1).

The record supports BLM's decision to enact the Revision Rule to address regulatory burdens imposed by the 2016 Rule in accordance with Executive Order No. 13,783. The Alliance and IPAA's prior brief at ECF No. 127 at 10 – 14,[1] and BLM's briefs at ECF Nos. 123 at 44 – 49 and 145 at 30 – 34, address most of Plaintiffs' arguments set forth in their Oppositions and Replies, ECF Nos. 141 at 20 – 22 and 145 at 17 – 19. These points need not be repeated.

Plaintiffs' remaining arguments are either wrong or irrelevant. Citizen Groups contend that "BLM did not explain how the modest compliance costs associated with the [2016 Rule] would burden any operator, let alone these large operators." ECF No. 141 at 22. Yet this statement is a perfect example of how, as Federal Defendants described, Plaintiffs "rely on misrepresentation and distortion" to attack BLM's regulatory impact analyses. *See* ECF No. 145 at 21. The record is

---

[1] Page citations herein refer to the paginated pages in a brief (not ECF page numbers).

LEGAL:10854-0001/13371308.1

-1-

WESTERN ENERGY ALLIANCE AND INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA'S
REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ◆ FAX 310-481-7650

1  replete with explanations of how the 2016 Rule's compliance costs burdened operators.[2] *See, e.g.*,

2  AR429-30 ("The proposed [Revision] rule would reduce compliance costs from the baseline. Over

3  the 10-year evaluation period (2019–2028), we estimate a total reduction in compliance costs of

4  $1.32 billion to 1.60 billion (NPV using a 7 percent discount rate) or $1.66 billion to 2.03 billion

5  (NPV using a 3 percent discount rate)."). Citizen Groups ignore this analysis simply because they

6  do not like its conclusion.

7         Citizens Groups also argue that the Revision Rule was not justified because, in their view,

8  the 2016 Rule will not burden "oil and gas operators writ large." ECF No. 141 at 21. In support of

9  this argument, they posit that "operators with over 100 BLM-managed wells own 75% (43,788 of

10  the total 58,120) of BLM-managed marginal wells, and they *each* earn on average up to $347

11  million annually from their BLM-managed wells." *Id.* at 22 (emphasis in original). These

12  statistics, in addition to being irrelevant, were compiled on behalf of Plaintiff Environmental

13  Defense Fund and have not been verified. *See* AR96431.

14         By arguing the Revision Rule will not burden oil and gas operators "writ large," Plaintiffs

15  continue to cling to the false premise that BLM can only utilize Executive Order No. 13,783 to

16  relieve regulatory burdens as measured on a per-company basis and that BLM must somehow

17  distinguish between small and large operators. Yet Executive Order No. 13,783 does not define

18  "burden" so narrowly. Under Executive Order No. 13,783 "burden" means "to unnecessarily

19  *obstruct, delay, curtail, or otherwise impose significant costs on* the . . . production . . . of energy

20  resources." AR1871 (emphasis added). Consistent with this definition, BLM determined that

21  many provisions of the 2016 Rule would have added burdens that "unnecessarily encumber energy

22

23         [2] *See also, e.g.*, AR9 ("BLM estimates that the administrative burden of the waste
minimization plan requirements would be roughly $5 million per year for industry"); AR10 (
24  "BLM estimates that [the 2016 rule's capture percentage] requirement, over 10 years from 2019–
2028, would impose costs of $556 million to $1.10 billion"); AR12 ("BLM estimates that §
25  3179.202, over 10 years from 2019–2028, would have imposed costs of about $29 million to $30
million"); AR417 (discussing burdens of 2016 rule); AR421 ("BLM estimates that this [capture
26  percentage] requirement, over 10 years from 2019– 2028, would impose costs of $516 million to
$1.04 billion"); *see generally* Regulatory Impact Analysis, AR32-141.
27

28  LEGAL:10854-0001/13371308.1

WESTERN ENERGY ALLIANCE AND INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA'S
REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1   production"—most significantly, by imposing significant compliance costs on marginal wells.[3]

2   *See, e.g.*, AR1. Per-well impacts on marginal wells provide the most appropriate indicator to

3   assess the burdens of the Revision Rule—not the proportion of marginal wells allegedly managed

4   by large operators (i.e., those with 100 BLM-managed wells) or these operators' revenues, as

5   Citizen Groups contend.

6         The ability of large operators to absorb compliance costs has no bearing on whether large

7   operators will keep marginal wells in production when faced with steep compliance costs. Both

8   large and small operators make decisions about the economic viability of any given well on an

9   individual well basis. *See* ECF No. 127 at 10–11; AR119236–39; *see, e.g.*, AR104416-17. When

10  the costs of keeping a well in production exceed the revenue it generates, any operator regardless

11  of size will be forced to shut in that well and possibly abandon it—because the point of operating

12  a well is to generate return from it, not lose money.[4] AR105 (explaining that operators have a

13  choice of "either shutting-in a marginal well or assuming unwarranted administrative burdens . . .

14  represent[ing] a substantial loss of income for companies"); *see also* AR119398. Large companies

15  are no more in the business of operating wells that do not return value than are small companies.

16        BLM cannot ignore the likelihood that the 2016 Rule would force operators to prematurely

17  shut in or abandon oil and gas wells—because the purported purpose of the 2016 Rule was to

18  *prevent waste*. *See, e.g.*, AR1. Viewed from the lens of waste prevention under the Mineral

19  Leasing Act, oil and natural gas prematurely left in the ground never to be recovered is no more or

20  less waste than natural gas produced but "avoidably" lost. *See* ECF No. 126 at 6–8, 10 (discussing

21  

22      [3] In any event, Plaintiffs may not challenge BLM's compliance with Executive Order
    No. 13,783. That order clarifies it "is not intended to, and does not, create any right or benefit,
23  substantive or procedural, enforceable in law or in equity by any party against the United States,
    its departments, [or] agencies." AR 1870; *see also Air Transport Ass'n of Am. v. F.A.A.*, 169 F.3d
24  1, 8-9 (D.D.C. 1999) (petitioner's reference to agency compliance with the executive order "is
    nothing more than an indirect—and impermissible—attempt to enforce private rights under the
25  order").

26      [4] Although Plaintiffs dismiss costs of compliance with the 2016 Rule as "modest," *see* ECF
    No. 141 at 22, BLM found them to be as much as 236 percent of annual revenues for marginal oil
27  wells and 1,037 percent of annual revenues for marginal gas wells. AR103.

28
    WESTERN ENERGY ALLIANCE AND INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA'S
    REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

historical concept of waste and stranded production). Thus, in executing its MLA mandate to prevent undue waste, BLM in promulgating the Revision Rule, evaluated burdens on a per-well basis to determine the likelihood that the 2016 Rule would force wells to be prematurely shut in or abandoned. *Id*. at 16-17.

For these reasons, BLM in its Revision Rule properly analyzed the 2016 Rule's impacts and correctly concluded they unnecessarily burdened energy production. *See, e.g.*, AR4. By promulgating the Revision Rule, BLM reasonably sought to reduce those burdens and prevent operators of all sizes from prematurely shutting in, or ceasing production from, marginal wells. *See, e.g.*, AR1.

Citizen Groups' assertion that the 2016 Rule will not burden oil and gas operators "writ large" suffers from other fallacies.[5] This assertion paints all oil and gas operators as monolithic when, in fact, the severity of the impact of the 2016 Rule depends on each operator and the diversity of wells in its portfolio. *Cf.* AR119237 (arguing that generalized per-company impacts "fail[ ] to account for key factors such as where an operator's wells are in their life cycle, an operator's agreements to transport and process produced oil and gas, the geologic formation being targeted, the costs to drill and complete a given well, debt loads, and myriad other considerations"). In particular, the Citizen Groups' assertion ignores that the 2016 Rule would disproportionately affect operators with a portfolio of largely or exclusively marginal wells.[6] *See* ECF No. 126 at 11; AR119398.

Moreover, Citizen Groups' suggestion that operators with "100 BLM-managed wells" and annual revenues of $347 million from such wells could absorb impacts from the 2016 Rule

---

[5] Citizen Groups have not cited any authority to support the proposition that a regulatory burden is unnecessary only if it burdens a majority or more of a regulated industry. *See* ECF No. 141 at 20-22.

[6] Compare Plaintiffs' argument with, for example, burdens imposed by a city's property tax. Under the Citizen Groups' theory, such a tax would be reasonable if 75 percent of property owners can absorb it, even if it could force up to 25 percent of the remaining homeowners to lose their property. *See* ECF No. 141 at 22 (Citizen Groups claim that large operators "who earn tens of millions of dollars in annual revenue" allegedly own 75 percent of BLM-managed marginal wells). One would be hard pressed to find a mayor or city council willing to impose such a tax.

LEGAL:10854-0001/13371308.1

-4-

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1  incorrectly suggests that all oil and gas operators are large companies. In fact, a majority of the

2  Alliance's and IPAA's members are small businesses with an average of 15 employees. ECF

3  No. 5-1 at 3, ¶ 3; AR119228. Finally, Citizen Groups do not explain why the threshold of "100

4  BLM-managed wells" is somehow relevant or meaningful to any regulatory impact analysis. ECF

5  No. 141 at 22. Therefore, Citizen Groups' argument that some operators could have absorbed the

6  impact of the 2016 Rule does not undermine BLM's conclusion that the 2016 Rule unduly

7  burdened energy production by disproportionately impacting marginal wells and marginal well

8  operators.

**B.      Plaintiffs Do Not Demonstrate Error in BLM's Marginal Well Analysis (Issue B-2a).**

**1.      Plaintiffs Had Sufficient Notice of the Marginal Well Issue.**

Impacts to marginal wells have been an issue addressed by BLM, industry members, the public, and Plaintiffs since the beginning of the 2016 Rule rulemaking process five years ago. BLM first raised the issue in its 2016 proposed Waste Prevention Rule (AR1025) and since then, the regulatory impacts on marginal wells have been discussed or argued in comment letters and litigation and analyzed in detail by various parties, including Plaintiffs. *See Calif. v. BLM*, No. 3:17-cv-07186-WHO, Plaintiffs' Notice of Motion and Motion for Preliminary Injunction; Memorandum of Points and Authorities, ECF 3 at 9, 13, 16, (N.D. Cal. Dec. 19, 2017). In fact, in 2017 the Citizen Groups noted that "[n]or is this [marginal well issue] a new concern." *See id.*, Conservation and Tribal Citizen Groups' Notice of Motion & Motion for Preliminary Injunction, ECF 4 at 13-14 (N.D. Cal. Dec. 19, 2017). Plaintiffs now seek to invalidate the Revision Rule by focusing on their inability to submit a new round of comments on a *single* BLM spreadsheet, which BLM prepared specifically to analyze and respond to Plaintiffs' marginal well comments for the proposed Revision Rule. *See* ECF 145 at 36-37.

The Administrative Procedure Act's ("APA") notice and comment requirement cannot be applied, as Plaintiffs request, to restrict BLM's ability to continue to collect and analyze information during the public comment period. *See id.* at 37-38 (citing *Rybachek v. U.S. E.P.A.*,

LEGAL:10854-0001/13371308.1

-5-

WESTERN ENERGY ALLIANCE AND INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA'S REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

904 F.2d 1276, 1286 (9th Cir. 1990)). Rather, as the Ninth Circuit reiterated in *Rybachek,* "it is 'perfectly predictable' that an administrative agency will collect new data during the comment period 'in a continuing effort to give the regulations a more accurate foundation' and … '[t]he agency should be encouraged to use such information in its final calculations without thereby risking the requirement of a new comment period'[.]" 904 F.2d at 1286 (quoting *BASF Wyandotte Corp. v. Costle*, 598 F.2d 637, 644-45 (1st Cir.1979)). Accordingly, the *Rybachek* court held that "EPA's addition of *over 6,000 pages* to the administrative record, after the public review-and-comment period had ended" did not violate the APA. *Id.* (emphasis added). Likewise, BLM's addition of a single spreadsheet did not violate the APA's notice and comment requirements.

Here, the record defeats Plaintiffs' argument that they were denied adequate opportunity to comment on the regulatory burdens imposed on operators of marginal wells and supports BLM's Revision Rule. As demonstrated in the following chart, well before the Revision Rule and commencement of this present case, all interested parties were (1) adequately put on notice that BLM was considering the impacts on marginal wells as a basis for its decision-making process, and (2) afforded ample opportunities to provide comments or analyses.

| Record Document / Brief | Description |
|---|---|
| 2016 Proposed Rule (2/8/16), AR1025 | Discussing impact of LDAR requirements on marginal or stripper wells and impact on small businesses |
| Environmental Defense Fund Comment Letter (4/22/16), AR21310-11 | Commenting that there should be no exemptions for "low-producing wells," "even for very small companies" (citing various studies) |
| Joint Environmental Commenters Letter (4/22/16), AR22323, 22327-32 | Supporting BLM decision not to exempt stripper or low-producing wells |
| BLM Response to Public Comments on Final Rule (11/16), AR1520-25 | Responding to comments on marginal/ stripper/ low-production volume wells |
| 2016 Final Rule (11/18/16), AR930 | Responding to comments on impacts to marginal or stripper wells |
| Brief in Support of Western Energy Alliance and Independent Petroleum Association of America's | "[T]he Rule will cause operators to shut-in marginal wells"; "the Rule provides no exemption when the cumulative impact of the Rule's requirements render a well uneconomic" |

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

WESTERN ENERGY ALLIANCE AND INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA'S
REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

| Record Document / Brief | Description |
|---|---|
| Petition for Review of Final Agency Action, D. Wyo. Case No. 2:16-cv-00285-SWS, ECF 142 at 22 (10/02/17) | |
| American Petroleum Institute's Amicus Brief in Support of Petitioners, D. Wyo. Case No. 2:16-cv-00285-SWS, ECF 153 at 13 (10/12/17) | "[T]he economic analysis does not consider the potential impacts of the Rule on the majority of BLM lessees—marginal well operators. The analysis simply fails to contemplate the possibility of widespread lease abandonment due to the 'alternative capture requirement,' which permits flaring only where the costs of capture would make the entire lease uneconomic and cause the lessee to abandon 'significant' reserves" |
| 2017 Proposed Delay Rule (10/5/17), AR686 | "During the litigation following the issuance of the 2016 final rule, the petitioners argued that the BLM underestimated the compliance costs of the final rule and that the costs would drive the industry away from Federal and Indian lands, thereby reducing royalties and harming State and tribal economies. The petitioners also argued that the final rule would cause marginal wells to be shut-in, thereby ceasing production and reducing economic benefits to local, State, tribal, and Federal governments. |
| Public Comments and Responses on the Waste Prevention-Delay Rule (12/1/17), AR829, 855 | Responding to comments on marginal well issues |
| 2017 Final Delay Rule (12/8/17), AR661-62 | "[D]espite the rule's assertions, many of the 2016 final rule's requirements would pose a particular compliance burden to operators of marginal or low-producing wells. There is newfound concern that this additional burden would jeopardize the ability of operators to maintain or economically operate these wells." |
| Conservation and Tribal Citizen Groups' Notice of Motion & Motion for Preliminary Injunction, N.D. Cal. Case No. 3:17-cv-07187-WHO, ECF 4 at 13-14 (12/19/17) | Criticizing BLM's reliance on marginal well impacts to support Suspension Rule, stating "Nor is this [marginal well issue] a new concern" |
| Plaintiffs' Notice of Motion and Motion for Preliminary Injunction; Memorandum of Points and Authorities, N.D. Cal. Case No. 3:17-cv-07186-WHO, ECF 3 at 9, 13, 16 (12/19/17) | Addressing marginal well issues |

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

WESTERN ENERGY ALLIANCE AND INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA'S
REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

| Record Document / Brief | Description |
|---|---|
| Intervenors Western Energy Alliance and Independent Petroleum Association of America's Response in Opposition to Plaintiffs' Motions for Preliminary Injunction, N.D. Cal. Case No. 17-cv-07186, ECF 68 at 17-18 (1/16/18) | Addressing BLM's proper reliance on potentially severe economic impacts on marginals as support for the Suspension Rule |
| 2018 Proposed Rule on Recession or Revision (2/22/18), AR 415-17, 423-24, 430-31 | "[T]he BLM acknowledges that the 2016 final rule . . . would affect existing wells, including a substantial number that are likely to be marginal or low-producing and therefore less likely to remain economical to operate if subjected to additional compliance costs." |
| Alliance's Comment Letter on Proposed Revision Rule (4/23/18), AR119237-38, 119392-119404 | Discussing and attaching report analyzing impacts to marginal wells on a per-well basis, and concluding that marginal wells are particularly susceptible to increases in operating costs |
| Citizen Groups' Comment Letter on Proposed Revision Rule (8/23/18), AR84044, 84074, 84083-89 | 7+ pages addressing marginal wells |

Plaintiffs alleged lack of notice about the marginal well issue is simply a pretext to ask this Court to disregard BLM's analysis of the actual costs of the 2016 Rule and reinstitute the 2016 Rule, which they favor. This Court should reject Plaintiffs' invitation.

**2.      Plaintiffs Lack Standing to Challenge BLM's Compliance with the Regulatory Flexibility Act.**

Plaintiffs fail to establish they have standing to challenge BLM's rationale for the Revision Rule under the Regulatory Flexibility Act ("RFA"). *See* ECF No. 127 at 14–16.

Both the States and Citizen Groups attempt to remedy their lack of standing by characterizing their challenges to BLM's compliance with the APA, not the RFA. *See* ECF No. 141 at 21 n.13; ECF No. 140 at 26 n.9. Yet this characterization elevates form over substance. For example, the States object to adequacy of notice of BLM's marginal well analysis. ECF No. 140 at 13–15. The Citizen Groups also claim BLM's RFA-related conclusions are inconsistent with BLM's rationale for reducing the 2016 Rule's burdens. *See e.g*., ECF No. 141 at 20-21.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ◆ FAX 310-481-7650

LEGAL:10854-0001/13371308.1

-8-

1    Similarly, the States claim BLM's "analysis under the [RFA]" contradicts "its reliance on

2    Executive Order 13783 as a basis for the [Revision Rule]." ECF No. 140 at 17. Whether

3    procedural or substantive, these challenges still fail for a lack of standing.[7]

4         Although the APA allows citizens to challenge agency decisions, it does not authorize

5    citizens to use the APA to bootstrap claims under any statute. *See* 5 U.S.C. § 702 ("A person . . .

6    adversely affected or aggrieved by agency action *within the meaning of a relevant statute*[] is

7    entitled to judicial review thereof." (emphasis added)); *Dir., Office of Workers' Comp. Programs,*

8    *Dep't of Labor v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 127 (1995). Rather,

9    when a plaintiff challenges compliance with a statute such as the RFA, the plaintiff must fall

10   within that statute's zone of interest. ECF No. 127 at 14-15. Here, Citizen Groups and the States

11   do not contend they fall within the RFA's zone of interest and, in fact, they do not.[8] *Id.* Thus,

12   Plaintiffs cannot demonstrate error in BLM's reasons for the Revision Rule, including notice of

13   the marginal well analysis, on the basis they allegedly conflict with the agency's conclusions

14   under the RFA.

15

16

17        [7] Between their Opening Briefs and Replies, Plaintiffs have significantly expanded their
     RFA challenges. *Compare* ECF No. 109 at 17-18 and ECF No. 108 at 29 *with* ECF No. 141 at 21
18   n.13 and ECF No. 140 at 26 n.9.

          [8] Rather than explaining how they fall within the RFA's zone of interest, the States instead
19   suggest that this Court's Order at ECF No. 95 required the Alliance and IPAA to have filed
     motions challenging Plaintiffs' "standing" by February 22, 2019. *See* ECF No. 140 at 26 n.9. The
20   Order at ECF No. 95 provided that "[a]ny Motion regarding standing must be filed by Friday,
     2/25/2019." The Alliance and IPAA do not seek to dismiss any of the Plaintiffs' claims for lack of
21   standing under the "cases" and "controversies" provisions of Article III of the U.S. Constitution.
     Rather, the Alliance and IPAA maintain the Plaintiffs cannot challenge BLM's RFA-related
22   findings because they are outside the RFA's "zone of interest." These types of standing are
     distinct. *See Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 154 (1970) ("apart
23   from the 'case' or 'controversy' test, the question [of standing concerns] whether the interest
     sought to be protected by the complainant is arguably within the zone of interests to be protected
24   or regulated by the statute or constitutional guarantee in question"). Further, the States provided
     minimal notice of their intent to challenge BLM's procedural compliance with the RFA by
25   burying this issue in their Letter Brief under the unrelated heading "BLM's Reliance on an
     'Interim Domestic Social Cost of Methane' Model in Its Regulatory Impact Analysis Is Arbitrary
26   and Capricious." *See* ECF No. 83 at 4.

27

28   LEGAL:10854-0001/13371308.1                           -9-
     ─────────────────────────────────────────────────────────────
     WESTERN ENERGY ALLIANCE AND INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA'S
     REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1    **C.     The Record Supports the Revision Rule (Issue B-2c).**

2          Similarly, Plaintiffs' contention that BLM was required to more "narrowly tailor" its

3    Revision Rule to only apply to marginal wells must be rejected.[9]   *See* ECF No. 141 at 27; ECF

4    No.140 at 26 (incorporating by reference Citizen Groups' argument on Issue B-2). The APA does

5    not require that agency rules be "narrowly tailored." *E.g.*, *Regents of the Univ. of Calif. v. Burwell*,

6    155 F. Supp. 3d 31, 54 (D.D.C. 2016) ("The APA does not mandate that regulations be narrowly

7    tailored to their objective"). Rather, to succeed in challenging the Revision Rule under the APA,

8    Plaintiffs must meet the familiar APA standards under 5 U.S.C. § 706. *See also Marsh v. Or. Nat.*

9    *Res. Council*, 490 U.S. 360, 378 (1989). Plaintiffs fail to cite any authority in which a court has

10   invalidated an agency rulemaking for failure to "narrowly tailor" a substantive rule. *See* ECF No.

11   109 at 20-21; ECF No. 141 at 27. Plaintiffs' reliance on *California v. BLM*, 286 F. Supp. 3d 1054

12   (N.D. Cal. 2018), is misplaced because that decision involved the propriety of an agency action

13   suspending a rule already in effect while the agency pursued a permanent rule, not an agency's

14   promulgation of a substantive regulation.

15          In any event, Citizen Groups' argument that the Revision Rule was not narrowly tailored to

16   address impacts to marginal wells ignores that BLM had multiple reasons for the Revision Rule.

17   The Revision Rule appropriately rescinded *all* provisions for which BLM determined it lacked

18   statutory authority. *See* AR7 ("Many of the rescinded provisions of the 2016 rule focused on

19   controlling emissions from sources and operations, which are regulated by EPA under its Clean

20   Air Act authority[.]"). This alone is sufficient rationale for BLM's action. *See* 5 U.S.C.

21   § 706(2)(C). In short, the record supports BLM's decision to rescind the provisions that it did.

22   **II.    BLM's Cost Benefit Analysis Supports the Revision Rule (Issue C).**

23          Plaintiffs' repeated arguments challenging BLM's cost-benefit analysis are without merit

24   and continue to highlight the fact that significant portions of the 2016 Rule were air quality and

25

26          [9] Plaintiffs' repeated reference to the Revision Rule as a "Rescission Rule" is another
     example of misinterpretation and distortion. The Alliance and IPAA addressed this in our prior
27   brief. ECF 127 at 5-7; *see also* ECF No. 123 at 6-8; ECF No. 126 at 1.

28   LEGAL:10854-0001/13371308.1                              -10-
     WESTERN ENERGY ALLIANCE AND INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA'S
     REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1  not waste prevention regulations. Plaintiffs' arguments simply reinforce that Plaintiffs'

2  *strenuously* prefer the 2016 Rule because it (unlawfully) put in place air quality regulations

3  designed solely to address air emissions and not waste. Plaintiffs' preference, no matter how

4  strong, does not render BLM's cost-benefit or environmental impact analysis deficient. *See*

5  *Wyoming v. U.S. Dep't of the Interior*, 366 F. Supp.3d 1284, 1290 (D. Wyo. 2018) ("Wish as they

6  might, neither the States, industry members, nor environmental groups are granted authority to

7  dictate oil and gas policy on federal public lands."), *order vacated, appeal dismissed sub nom.*

8  *Wyoming v. U.S. Dep't of Interior*, 768 F. App'x 790 (10th Cir. 2019).

9       Plaintiffs also argue that the entire Revision Rule should be invalidated because, in

10  generating a baseline from which to estimate costs and benefits, BLM assumed "that *no* operators

11  have taken any steps to comply with the Waste Prevention Rule."[10] ECF No. 141 at 33. Operators,

12  however, did not incur compliance costs for the phase-in provisions because the implementation

13  deadlines were administratively or judicially stayed. AR661; *Wyo.*, 366 F. Supp. 3d at 1291-92.

14  The compliance costs operators incurred for the provisions of the 2016 Rule that required

15  compliance in January 2017, however, were minimal relative to the costs operators did not incur.

16  Thus, BLM's baseline assumption was reasonable. Even had BLM incorporated the pre-January

17  2017 compliance costs into the baseline, these costs would have had no effect on the outcome.[11]

18  *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1090 (9th Cir. 2014) (requested relief denied

19  where "any claimed deficiencies are without consequence").

20

21

22       [10] Citizen Groups conveniently ignore the fact that the provisions of the 2016 Rule with
compliance deadlines of 2018 or later ("phase-in provisions") were far more difficult and
23  expensive to implement than the provisions that required compliance on January 17, 2017. *See,
e.g.*, AR10 ("BLM estimates that [the 2016 rule's capture percentage] requirement, over 10 years
24  from 2019–2028, would impose costs of $556 million to $1.10 billion"); *see also* ECF No. 123 at
47 (BLM noting "there were year-long phase-in periods for many of the most capital-intensive
25  provisions of the 2016 Rule").

26       [11] Notably, nowhere in their argument do the Citizen Groups assert BLM alleged flaw in its
baseline cost assumption affects the outcome of its analysis or is otherwise material to BLM's
27  determination. *See* ECF No. 141 at 33.

28  LEGAL:10854-0001/13371308.1                    -11-

1    Plaintiffs also ignore that BLM understated the costs of complying with the 2016 Rule—a

2  fact that BLM itself acknowledges. *See* AR 735 ("[D]uring the rulemaking process for the 2016

3  final rule, the BLM received a substantial number of comments suggesting that the BLM's

4  estimated compliance costs were inadequate and that the actual costs of the rule would be much

5  higher."). Thus, even if BLM had adjusted its baseline to incorporate artificially low compliance

6  costs for the 2016 Rule, it only would have compounded its errors. BLM's decision not to

7  perpetuate its prior errors is reasonable. In sum, Plaintiffs have not demonstrated that BLM's

8  assumptions and methodologies made in support of its cost-benefit analysis are in error and have

9  not provided this Court with any reason to overturn BLM's cost-benefit methodology or

10  determinations.

11                                **CONCLUSION**

12    For these reasons, in addition to those explained in the Federal Defendants' and API's

13  briefs, Defendants are entitled to summary judgment as a matter of law and the Court should

14  uphold the Revision Rule.

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27

28  LEGAL:10854-0001/13371308.1

-12-

WESTERN ENERGY ALLIANCE AND INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA'S
REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1

2    DATED:  December 11, 2019          HOLLAND & HART LLP

3

4                                      By:        */s/ Eric P. Waeckerlin*

5
                                       Attorneys for INTERVENORS WESTERN ENERGY
6                                      ALLIANCE and the INDEPENDENT PETROLEUM
                                       ASSOCIATION OF AMERICA
7

8    DATED:  December 11, 2019          DAVIS GRAHAM & STUBBS LLP

9

10                                     By:        */s/ Kathleen C. Shroder*

11
                                       Attorneys for INTERVENORS WESTERN ENERGY
12                                     ALLIANCE and the INDEPENDENT PETROLEUM
                                       ASSOCIATION OF AMERICA
13

14   DATED:  December 11, 2019          WOOD, SMITH, HENNING & BERMAN LLP

15

16                                     By:        */s/ Thomas F Vandenburg*

17                                     THOMAS F. VANDENBURG
                                       STRATTON P. CONSTANTINIDES
18                                     Attorneys for INTERVENORS WESTERN ENERGY
                                       ALLIANCE and the INDEPENDENT PETROLEUM
19                                     ASSOCIATION OF AMERICA

20

21

22

23

24

25

26

27

28   LEGAL:10854-0001/13371308.1
                                              -13-
     WESTERN ENERGY ALLIANCE AND INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA'S
                  REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 10960 Wilshire Boulevard, 18th Floor, Los Angeles, CA 90024-3804.

On December 11, 2019, I served the following document(s) described as **WESTERN ENERGY ALLIANCE AND INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action as follows:

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 11, 2019, at Los Angeles, California.


/s/ Amy L. Stark
Amy L. Stark

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:10854-0001/13371308.1

-1-

WESTERN ENERGY ALLIANCE AND INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA'S
REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT